## CABELL & McGUIRE

*v.*

## SOUTHERN MUT. INS. CO.

*(Supreme Court of Appeals of Virginia, May, 1886.)*

[Virginia Law Journal, 1886, p. 721.]

Supreme Court of Appeals—Jurisdiction—Case at Bar.

The So. Mut. Ins. Co. conveyed to C. & McG. all its assets in trust for its creditors, and the trustees brought suit against the company and its mutual policy holders, asking that assessments be made upon the "deposit notes" of the policy holders to pay the creditors; the several claims against the numerous defendants were less than $500, but the aggregate of the claims of the plaintiffs exceeded that sum : *held* :

Same—Same—Same.

1. The aggregate of all the claims is the plaintiff's demand against all the defendants; it is the matter in controversy, and this court has jurisdiction upon appeal by the plaintiffs.

Same—Same—Same.

2. The trustees represent the insured creditors, whose debts exceed the jurisdictional sum, and upon this ground also the court has jurisdiction.

Fire Insurance—Mutual—Assessments upon Policies—Case at Bar.*

Policy holders in the So. Mut. Ins. Co., in pursuance of its charter, gave premium or deposit notes conditioned to be "paid at such time or times and in such sum or sums as the directors may require to pay the expenses and losses of the company"; the company suspended business and conveyed its assets to trustees for the benefit of its creditors; in suit by the trustees to assess the deposit notes of the policy holders whose policies had not expired at the date of suspension, to pay creditors : *held* :

Same—Same—Same.

The deposit notes are liable to be assessed for all losses incurred before the expiration of the policies, and the assessments may be made after the expiration of the policies.

---

*See monographic note on "Insurance, Fire and Marine" appended to Mutual, etc., So. *v.* Holt; 29 Gratt. 612 (Va. Rep. Anno.).

Appeal from chancery court of Richmond.

The Southern Mutual Insurance Company was chartered in 1868, with "power to make insurances of any kind in the fire, marine, tornado, or life line, on the mutual and cash plan." The fourth section of its charter gave it "power to receive premium or deposit notes from those who effected insurances, which shall be paid at such time or times, and in such sum or sums, as the directors may require to pay the expenses and losses of the company." The fifth section provided that if any member should fail to pay any assessment for thirty days after written notice, the company might bring suit to recover the whole of the premium note, etc. The company confined itself to fire insurance, and policies on the mutual plan were issued for the term of five years. The deposit notes which were taken conformed in terms strictly to the fourth section of the charter, cited above. The company did business for eight years, and then, becoming insolvent, retired on September 30th, 1876, and conveyed all its assets to J. G. Cabell and Hunter McGuire in trust for its creditors; the assets consisted almost exclusively of deposit notes, about twenty-five per cent. of the face amount of each of which had not been assessed for by the directors.

. In 1877 the trustees filed their bill in the chancery court against the company and those of its mutual policy holders whose policies had not expired before October 1st, 1876, but had been and were then expiring, asking that a call or calls for the unpaid portion of the deposit notes might be made by the court. Many of the defendants appeared and set up, among others, the defense of forfeiture and parol representations, which were finally overruled by the then chancellor, Judge Fitzhugh, and a call ordered as prayed for, on March 6th, 1880. A dividend being paid disclosed the fact that the proceedings on the original bill had failed to pay the debts in full, and a report having been made show-

ing the dates at which the several debts and liabilities accrued, an amended and supplemental bill was filed, bringing in the mutual policy holders who had not been included in the original bill. The cause was then referred to a commissioner to inquire which of the mutual policy holders were then liable to assessment on their deposit notes, the amount for which each was liable, and the amount which should be called for from each in order to pay the debts, etc. Upon the coming in of this report, and depositions taken, etc., the case was heard by Judge W. S. Barton, sitting for Judge A. L. Holladay, the then chancellor (who had been counsel in the case), who dismissed the amended bill on the ground that no assessment could be made on the deposit notes after the expiration of the policies. And from this decree the plaintiffs appealed.

*Harrison & Burwell*, for appellants.

*John B. Young* and *J. Sam'l Parrish*, for appellees.

LACY, J., delivered the opinion of the court.

The first question raised here is as to the jurisdiction of the court. The aggregate of the claims of the plaintiffs, the appellants here, exceeds the sum of $500. Each claim against the numerous defendants is less than that sum. The aggregate of all the claims is the plaintiffs' demand against all the defendants. This is the matter in controversy, and the right of the plaintiff to appeal when his bill is dismissed is clear. Winchester and Strasburg R. R. Co. v. Colfelt, 27 Gratt. 780 ; Gage v. Crockett, 27 Gratt. 736 ; Campbell v. Smith, 32 Gratt. 290 ; McCrowell v. Burson, 79 Va. 301, 302, and cases cited in the opinion of Richardson; J. In this case the trustees represent the insured creditors, whose debts exceed the jurisdictional sum, and upon that ground

also the jurisdiction is maintained.    Atkinson v. McCormick, 76 Va. 798.

The plaintiffs in the chancery court claimed the right to assess the policy holders on their deposit notes, after the expiration of their policies, provided the losses or expenses assessed for occurred before the expiration of the policies. The defendants, the policy holders, admit their liability for losses, etc., incurred before the expiration of their policies, but they deny the right of the company to assess them therefor after the expiration of their policies.    They claim that their liability to charge and their liability to be assessed for such losses ends with the expiration of their policies.

The plaintiffs admit that they cannot be charged for losses which occurred after the expiration of their policies, but maintain the right to assess them after the expiration of their policies for losses incurred before the policy expired.    The plan was mutual, and the charter provided that the deposit notes should be paid at such time or times, and in such sum or sums, as the directors might require, to pay the expenses and losses of the company; and also gave power to the directors to fix the amount to be paid in cash at the time of effecting the insurance.    The utmost extent of the insured's liability was his deposit note ; the degree to which that was to be enforced against him was his assessed, ratable share of such expenses and losses as should be incurred by the company during the life of his policy.    His liability thus ascertained was to be paid by him "at such time or times, and in such sum or sums, as the directors might require," for the stated purposes.

If the insured admits that this charge is upon him, upon what can he contend that the right to assess his note ceases before the charge has been satisfied ?    If he is liable for losses incurred during the life of his policy, upon what sound reason can be found a distinction between a loss occurring the last day of his period of liability and such as may occur

the first day? Yet if his contention is sound, he is bound for the latter, but has escaped the former altogether. Obviously, losses cannot be assessed for until they are known and proved, and the question here is not when they became known, but when they occurred. If they occurred during the time when he was bound, then the assessment cannot be avoided. There is no limitation to be found in the policy, and there is none in reason, which will sustain the contention of the defendant below, the appellee here. After having bound himself to contribute, he cannot be discharged from the obligation he has assumed until the contribution has been actually made, or the obligation in some lawful way extinguished. Hawley v. Upton, 102 U. S. S. C. R. ; Upton v. Tribetcock, 91 U. S. 45 ; Webster v. Upton, Id. 65 ; Smith v. Saratoga Co. Mutual Ins. Co., 3 Hill 512 ; Swanscott Machine Co. v. Partridge, 5 Foster 373 ; Jackson, Receiver, v. Roberts, 31 N. Y. 304 ; Sand, &c., v. Saunders, 28 N. Y. 416 ; People's Fire Ins. Co. v. Hartshorne Co., 90 Penn. St. 470 ; Aikers v. Hita, 94 Penn. St. 398 ; Fayette Mut. Ins. Co. v. Fuller, 8 Allen 27 ; Atlantic Ins. Co. v. Goodall, 35 N. H. 336.

The chancery court held that the right to assess ended with the life of the policy, although the losses occurred prior to the end of the policy, and dismissed the plaintiffs' bill. This was plainly erroneous, and the said decree must be reversed, and the cause remanded to the said court for further proceedings to be had therein as prayed in the plaintiffs' amended bill.

Decree reversed.

FAUNTLEROY, J., dissents.